# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***In re A.L.*, 2012 IL App (2d) 110992**

| | |
|---|---|
| Appellate Court Caption | *In re* A.L., B.C., and E.C., Minors (The People of the State of Illinois, Petitioner-Appellee, v. Lasaysha L., Respondent-Appellant). |
| District & No. | Second District<br>Docket No. 2-11-0992 |
| Filed | May 3, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court's adjudication of respondent's children as neglected and the order placing the children with the Department of Children and Family Services based on the finding that respondent was dispositionally unfit were affirmed, notwithstanding respondent's contentions that the adjudication of neglect was based only on her stipulation without an inquiry into the factual basis and that the dispositional order was not founded on a valid order of neglect, since the trial court's interest in whether the children were neglected warranted expediting the adjudicatory hearing, respondent's parental rights were not being terminated, she was afforded a full evidentiary hearing at the dispositional stage, the trial court expressly stated that the findings of neglect were based on the stipulation, the findings based on one father's drug abuse problem were not against the manifest weight of the evidence and were not cured by his subsequent death of an overdose, and the trial court properly proceeded to a dispositional hearing. |
| Decision Under Review | Appeal from the Circuit Court of Winnebago County, Nos. 11-JA-123, 11-JA-124, 11-JA-125; the Hon. Mary Linn Green, Judge, presiding. |

| | |
|---|---|
| Judgment | Affirmed. |
| | |
| Counsel on Appeal | Robert F. May, of Law Offices of Robert D. Lowe, of Rockford, for appellant. |
| | |
| | Joseph P. Bruscato, State's Attorney, of Rockford (Lawrence M. Bauer and Victoria E. Jozef, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |
| | |
| Panel | JUSTICE HUTCHINSON delivered the judgment of the court, with opinion. |
| | Justice Hudson concurred in the judgment and opinion. |
| | Justice Birkett dissented, with opinion. |

**OPINION**

¶ 1    In 2011, the State filed neglect petitions on behalf of A.L., B.C., and E.C. (collectively, the minors). Thereafter, respondent, Lasaysha L., stipulated to an amended count of neglect in each petition, and the State dismissed the remaining counts in the petitions. Pursuant to respondent's factual stipulation, the trial court adjudicated the minors neglected, and the matter proceeded to a dispositional hearing. After that hearing, during which evidence was presented, the trial court found respondent dispositionally unfit and ordered guardianship and custody of the minors with the Department of Children and Family Services (the Department). Respondent appeals, contending that: (1) the trial court's adjudication of neglect, based only on her stipulation, violated her right to due process and was against the manifest weight of the evidence; and (2) the trial court's subsequent dispositional order was improper absent a valid finding of neglect. We affirm.

¶ 2                                  I. Background
¶ 3    Only the facts relevant for the purposes of this appeal will be set forth below. Respondent is the biological mother of the minors. Respondent was married to Bill L., A.L.'s biological father and E.C.'s and B.C.'s stepfather. Bill L. was deceased when the State filed its petitions. Brian C. is the biological father of E.C. and B.C., but he was never married to respondent and is not a party to this litigation. When the petitions were filed, respondent was residing with the minors in Tennessee.

¶ 4    On April 18, 2011, the State filed its neglect petitions, which were substantively similar

with respect to each minor. Count I alleged that respondent left the minors in the care of Bill L., placing them at risk of harm. Count II alleged that drugs and drug paraphernalia were found in the home and were easily accessible to the minors. Count III alleged that the minors were subject to an injurious environment because respondent had a substance abuse problem that prevented her from properly parenting, placing the minors at risk of harm. During the initial hearing, the trial court appointed counsel and admonished respondent regarding her rights and the State's burden of proof. Specifically, the trial court admonished respondent that the State bore the burden to prove the allegations by a preponderance of the evidence. The trial court further advised respondent that the minors could be made wards of the court if the State met its burden and the trial court concluded that making the minors wards of the court was in the best interests of the minors.

¶ 5    During a pretrial conference on July 22, 2011, the trial court was advised that respondent had recently moved to Tennessee with the minors and that, on July 7, 2011, the trial court judge in a related family court proceeding gave temporary physical custody of B.C. and E.C. to Sandra F., their paternal grandmother. The trial court in this case conducted a hearing later that day, with respondent and her attorney present. The guardian *ad litem* from the related family court proceeding appeared and advised the trial court that she prepared a report. The trial court acknowledged that it "received [the report]" and "reviewed it." The State argued that respondent's removal of the minors from Illinois to Tennessee was "inappropriate." In support, the State noted that there was a police report indicating that respondent was charged with driving under the influence in 2009. The State raised other concerns, including that drugs and drug paraphernalia were found in the home, and stated that it would defer to the guardian *ad litem* in the family court proceeding to express her concerns. The State argued that the minors should be returned to Illinois. Respondent's counsel objected to the minors being returned to Illinois and advised the trial court that respondent had a residence in Tennessee.

¶ 6    Subsequently, the trial court asked the guardian *ad litem* from the family court proceeding to comment on whether the minors should be returned from Tennessee. The guardian *ad litem* advised the trial court that she had "done quite a bit of investigation on this case" and that "[t]here are several incidents." The guardian *ad litem* informed the trial court of a police report indicating that respondent had pulled a knife on Bill L. She also noted that Bill L. "died of a massive drug overdose, which is what I believe instigated this proceeding." The guardian *ad litem* further advised that, in November 2010, respondent picked up the minors from school while she was allegedly intoxicated and threatened to harm the supervisors at the after-school program. Respondent had to be restrained during the incident and was arrested for resisting arrest. Thereafter, respondent's counsel and the trial court asked the guardian *ad litem* a series of questions, including whether she had met with respondent or the minors. The guardian *ad litem* responded that she spoke with the minors and respondent by phone but was unable to meet with the minors. Finally, the trial court asked respondent who was caring for the minors in Tennessee. Respondent replied that her fiancé was caring for the minors so she could attend the proceeding and that her landlord in Tennessee was also helping care for them.

¶ 7    At that point in the proceedings, the State moved for a shelter-care hearing. The State

argued that it was necessary for the trial court to consider the evidence, which would include the report and testimony from the guardian *ad litem* from the family court proceeding. The State argued "[o]bviously, [the parties] are stating their positions, but all of the positions are proffers and setups of what we think the evidence will show." The trial court granted the State's motion for a shelter-care hearing. After a short recess, the trial court accepted an agreement between the parties that respondent would bring the minors back from Tennessee and that the minors would reside with Sandy L., A.L.'s paternal grandmother, during the pendency of the proceedings.

¶ 8    On August 10, 2011, the State amended count I of each petition. A.L.'s petition was amended to allege that Bill L. had a substance abuse problem that impaired his parenting, placing the minor at risk. E.C. and B.C.'s petitions were similarly amended. At a hearing held on that day, respondent factually stipulated to the amended count I of each petition and, pursuant to an agreement, the State dismissed the remaining counts of the petitions. During the hearing, respondent's attorney advised the trial court that he was "on the same page as the State." The trial court then found the minors neglected, stating:

"Pursuant to the agreement recited by the State, agreed to by the parties, the [trial court] adjudicates the minors to be neglected pursuant to [respondent's] *** stipulation to [a]mended [c]ount 1 of the [petitions]."

The trial court's written orders provided that the minors were adjudicated neglected pursuant to the "factual stipulation by mother to [c]ount 1 as amended."

¶ 9    The matter proceeded to a dispositional hearing on August 16, 2011, and both parties were afforded the opportunity to submit evidence. The record reflects that respondent argued at that hearing that it was in the minors' best interests that guardianship and custody remained with her. At the conclusion of the hearing, the trial court found respondent dispositionally unfit and ordered guardianship and custody with the Department. Respondent timely appeals.

¶ 10                                    II. Analysis

¶ 11                       A. Due Process and Finding of Neglect

¶ 12    Respondent presents the first issue on appeal as "[w]hether there was sufficient factual evidence and due process to uphold [respondent's] stipulation and the trial court's adjudication of neglect as to the [minors] on August 10, 2011." With respect to due process, respondent argues that her stipulation was not made knowingly and voluntarily, because the trial court did not inquire as to the factual basis of that stipulation before accepting it. Respondent further argues that the trial court's finding of neglect was against the manifest weight of the evidence because Bill L. was deceased when the State filed the petitions.

¶ 13    The Juvenile Court Act of 1987 (the Act) provides a step-by-step framework for determining whether a minor shall be removed from his or her parents and made a ward of the state. 705 ILCS 405/1-1 to 7-1 (West 2010). Following a temporary custody hearing pursuant to section 2-10 of the Act (705 ILCS 405/2-10 (West 2010)), the trial court must make a finding of abuse, neglect, or dependence before it conducts an adjudication of wardship. Section 2-3(1)(b) of the Act defines a "neglected minor" to include any minor

-4-

under 18 years of age whose environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2010). While our supreme court has noted that the term "injurious environment" is an "amorphous concept that cannot be defined with particularity," it generally includes "the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." (Internal quotation marks omitted.) *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004) (quoting *In re N.B.*, 191 Ill. 2d 338, 346 (2000)). Section 2-21(1) of the Act provides that, if the court finds that the minor is abused, neglected, or dependent:

> "[T]he court shall then determine and put in writing the factual basis supporting that determination, and specify, to the extent possible, the acts or omissions or both of each parent, guardian, or legal custodian that form the basis of the court's findings." 705 ILCS 405/2-21(1) (West 2010).

Because of the "fact-driven nature" of neglect and injurious environmental rulings, a reviewing court will reverse a finding of neglect only if it is against the manifest weight of the evidence. *In re N.B.*, 191 Ill. 2d at 346. A ruling is against the manifest weight of the evidence only if the opposite conclusion is clearly evident; and given the delicacy and difficulty of child custody determinations, the discretion vested with the trial court is even greater than in an ordinary appeal applying the manifest-weight-of-the-evidence standard of review. *In re R.S.*, 382 Ill. App. 3d 453, 459-60 (2008).

¶ 14    In addition, the United States Supreme Court and Illinois courts have recognized parents' liberty interest in raising their children. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *In re M.H.*, 196 Ill. 2d 356, 362 (2001). The *Troxel* Court, after discussing extensive precedent, opined that "it cannot now be doubted that the [d]ue [p]rocess [c]lause of the [f]ourteenth [a]mendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66. Accordingly, because a termination proceeding seeks to end the parent's fundamental liberty interest, the procedures involved must meet the requisites of the due process clause. *In re M.H.*, 196 Ill. 2d at 363 (citing *Santosky v. Kramer*, 455 U.S. 745, 762 (1982)). The three factors to be considered in determining what due process requires are (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest through the procedures used, and the probable value of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute safeguards would entail. *In re M.H.*, 196 Ill. 2d at 363 (citing *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

¶ 15    Guided by these principles, we first address respondent's argument that she was denied due process. This argument requires us to determine whether due process required the trial court to ensure the existence of a factual basis before accepting respondent's stipulation to an allegation of neglect. Respondent relies primarily on our supreme court's decision in *In re M.H.*, 196 Ill. 2d 356. In that case, the State filed a petition for termination of parental rights with respect to the respondent's two children who, thereafter, were removed from the respondent's custody. *Id.* at 358. After the minors were adjudicated neglected, the State filed a supplemental petition for termination of the respondent's parental rights, alleging in part that the respondent failed to make reasonable progress toward the return of the minors to her within 12 months after the adjudication of neglect. *Id.* at 358-59. During the termination

hearing, the State informed the trial court that the respondent would admit that she failed to make reasonable progress toward the return of the minors. The trial court asked the respondent whether she understood her right to have the State prove by clear and convincing evidence that she was unfit, and it asked the respondent if she wanted a moment to confer with her attorney before making her admission. *Id.* at 359-60. After the respondent's verbal agreement, the trial court accepted her admission of unfitness. *Id.* at 360. Following an additional hearing, the trial court found that it was in the minors' best interests that the respondent's parental rights be terminated. *Id.*

¶ 16   On appeal, the appellate court vacated the order terminating the respondent's parental rights, and the supreme court affirmed. *Id.* at 368. Relying on *Mathews*, 424 U.S. 319, our supreme court noted that the interest of parental care of a child is fundamental and will not be terminated lightly. *In re M.H.*, 196 Ill. 2d at 365. Therefore, before a child can be made a ward of the court, the State must prove abuse, neglect, or dependence by a preponderance of the evidence; and before a court can adjudicate a parent unfit and terminate parental rights, the State must prove by clear and convincing evidence that the parent is unfit. *Id.* The supreme court noted that, because an admission of neglect must be knowing and voluntary, an admission of unfitness must also be knowing and voluntary. *Id.* at 366. The supreme court concluded that there must be a factual basis for an admission of unfitness, because it "allows the parent to hear the State describe the alleged facts relating to fitness and give the parent an opportunity to challenge or correct any facts that are disputed." *Id.* at 367. The supreme court emphasized that, without a factual basis, there is a danger that the parent understands the State's allegations but does not realize that his or her conduct does not fit within those allegations. *Id.* Therefore, if a parent is not fully informed of the factual basis underlying the State's allegations, there exists an increased chance that parental rights will be erroneously terminated because of an ill-advised admission of unfitness. *Id.* As a result, the supreme court held that due process required the trial court to determine whether a factual basis existed for the respondent's admission of unfitness. *Id.* at 368.

¶ 17   Subsequently, the Illinois Appellate Court, Fifth District, considered whether abuse needed to be established at a termination hearing when at the adjudicatory stage the parents admitted to the State's allegations of neglect and abuse. *In re A.A.*, 324 Ill. App. 3d 227 (2001). In distinguishing *In re M.H.*, the Fifth District initially noted that *In re M.H.* involved the parent admitting to the allegations of a petition to terminate parental rights and that the trial court accepted the admission without hearing any factual basis for the admission. *Id.* at 237. Conversely, in the matter before it, the parents were provided with a full and complete evidentiary hearing before their parental rights were ultimately terminated. *Id.* The court considered the three due process factors outlined by the *Mathews* Court and concluded that, although the interest in the case before it–the parents' care, custody, and control of their children–was the same as in *In re M.H.*, the risk of an erroneous deprivation of that interest was "not quite the same." *Id.* at 239. Specifically, the court stated:

> "The risk of an erroneous temporary deprivation of this right, however, is not quite the same as the risk involved in a permanent termination proceeding like the one in *In re M.H.* After the initial, adjudicatory stage of the proceedings, the parents have numerous opportunities over a lengthy period of time to regain the custody of their

-6-

children. In contrast, after the order terminating parental rights is filed, the parents' only avenue of redress is with the courts of review. Because the risk of an erroneous deprivation involves a much greater loss with much less ability to correct any errors, the proof required at the two stages of the proceedings is also different. At the initial, adjudicatory stage, the State must prove the right to remove the children from the parents' custody by a preponderance of the evidence. At the termination stage, the State must prove the parents to be unfit by clear and convincing evidence. The difference in the level of proof *** is relevant *** because if an adjudication is proper with only a preponderance of the evidence, then a lower level of proof, by way of a parental admission together with the facts of record demonstrating the factual basis for the initial removal, is sufficient to protect the parents' due process rights at that stage of the proceedings. Since the risk of an erroneous deprivation is lower at the adjudicatory stage than at the termination stage, there is no due process right to any additional procedural safeguards *** above those already in place herein." *Id.* at 239-40.

The court concluded that, because the proof necessary for an adjudication is less than that necessary for a termination, the State's fiscal and administrative interests in reducing the costs of those proceedings are more important at the initial stage than at the final termination stage. *Id.* at 240. Thus, the parents' admission at the adjudicatory stage that one of the minors was sexually abused, combined with the additional evidence presented at the termination stage, was sufficient and did not violate their right to due process. *Id.* The court concluded:

"To require more at this early stage of the proceedings would not add any protection to the primary interest at the first stage–the welfare of the children. The number of adjudicatory hearings in our state's more populous counties would far exceed the number of termination proceedings, and there is an overwhelming government interest in expediting these adjudicatory proceedings to 'act in a just and speedy manner to determine the best interests of the minor, including providing for the safety of the minor.' " *Id.* (quoting 705 ILCS 405/2-14(a) (West 1998)).

¶ 18    The Fifth District's reasoning in *In re A.A.* is persuasive. The purpose of an adjudicatory hearing pursuant to section 2-21(1) of the Act is to determine whether the minor is abused, neglected, or dependent. *In re Arthur H.*, 212 Ill. 2d at 466. As our supreme noted, "[i]t is only *after* the [trial court] has adjudicated the child neglected that the statute directs the court to consider the actions of the parents." (Emphasis in original.) *Id.*; see also *In re J.W.*, 386 Ill. App. 3d 847, 855 (2008) (noting that a trial court's finding under section 2-21 does not adjudicate a parent "guilty"). Therefore, we agree with the court in *In re A.A.* that the State has a compelling interest in expediting the first-stage adjudicatory hearing so as to act in a speedy and just manner to determine the best interests of the minors. *In re A.A.*, 324 Ill. App. 3d at 240.

¶ 19    Equally important, as the court in *In re A.A.* also emphasized, the risk of respondent being deprived of her fundamental interest in the care, custody, and control of the minors is not the same at the initial adjudicatory stage as it is at the dispositional phase. See *id.* at 239-40. Here, the record reflects that the factual allegations respondent stipulated to were clearly set forth in the petitions. Respondent was afforded a full evidentiary hearing at the dispositional stage. She had the opportunity at that later stage to correct any errors that might

have occurred during the earlier stage in the proceedings. See *id.* at 239. Conversely, at the permanent termination stage at issue in *In re M.H.*, the respondent's only recourse was with the courts of review. *In re M.H.*, 196 Ill. 2d at 358-59. As did our colleagues in the Fifth District, we consider this distinction significant.

¶ 20 Our determination is consistent with the Fourth District's recent holding in *In re C.J.*, 2011 IL App (4th) 110476. In *In re C.J.*, the State filed a petition alleging that the minor was abused in that the respondent and the minor's biological father inflicted, or allowed to be inflicted, physical injury, resulting in five fractured ribs. *Id.* ¶ 4. The following day, the trial court conducted a shelter-care hearing, during which it considered a shelter-care report prepared by the Department showing that the minor was admitted to the hospital with two fractured ribs, among other injuries. *Id.* ¶¶ 6-12. Considering the shelter-care report, and also the respondent's stipulation that probable cause existed to believe that the minor had been abused and that an immediate necessity existed to place the minor in shelter care, the trial court gave temporary custody of the minor to the Department. *Id.* ¶ 12.

¶ 21 After the State filed a supplemental petition, the trial court conducted an adjudicatory hearing. The trial court advised the parties that the respondent was going to make an admission of abuse and that if the trial court found a factual basis, along with a " 'free and voluntary admission, then [the trial court] was going to receive documentation from [the State] *** to try to determine what acts or omissions of the parents *** form the basis of the [c]ourt's findings.' " *Id.* ¶ 15. The trial court advised that the matter would, at that point, be recessed so the trial court could review the submitted materials, including police reports and medical records. *Id.* ¶¶ 16-17. Once the proceedings resumed, the trial court would hear argument and determine, to the extent possible, what acts by the parents formed the basis of the finding of abuse. *Id.* Thereafter, the State provided a factual basis, which included the minor's medical examination while hospitalized, the *curricula vitae* of attending physicians, and the respondent's police interview, among other materials. *Id.* ¶ 16. However, because the trial court had yet to review the exhibits proffered by the State, it relied on the shelter-care report to find that a factual basis existed for the respondent's admission that the minor was abused. *Id.* ¶ 17.

¶ 22 On appeal, the reviewing court initially rejected the respondent's argument that she did not knowingly and voluntarily admit that the minor was abused. In rejecting the respondent's argument that *In re M.H.* controlled the matter before it, the reviewing court stated:

"We reject respondent's contention that *M.H.* stands for the proposition that the State must provide a factual basis prior to a respondent's admission that a child is abused, neglected, or dependent at an adjudicatory hearing. Instead–as we have noted–*M.H.* stands for the proposition that 'due process requires a [trial] court to determine whether a factual basis exists for an admission of parental unfitness *before it accepts the admission*.' " (Emphases omitted and in original.) *Id.* ¶ 30 (quoting *In re M.H.*, 196 Ill. 2d at 368).

Relying on *In re A.A.*, 324 Ill. App. 3d at 239-40, the reviewing court concluded that, because the respondent acknowledged that she understood the allegation in the State's petition and was not promised anything in return for her admission, the trial court properly accepted the

shelter-care report as the factual basis for the respondent's admission that the minor was abused. *C.J.*, 2011 IL App (4th) 110476, ¶ 32.

¶ 23 Subsequently, the reviewing court in *In re C.J.* considered the sufficiency of the factual basis that the State presented to support the respondent's admission. By way of comparison, the reviewing court outlined the factual-basis requirements pursuant to Illinois Supreme Court Rule 402(c) (eff. July 1, 1997), which provides, "The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." *In re C.J.*, 2011 IL App (4th) 110476, ¶¶ 50-51. The reviewing court explained that " '[t]he factual basis for a guilty plea will generally consist of an express admission by the defendant that he committed the acts alleged in the indictment or a recital to the court of the evidence that supports allegations in the indictment.' " *Id.* ¶ 53 (quoting *People v. White*, 2011 IL 109616, ¶ 17). After summarizing Rule 402(c)'s requirements, the reviewing court stated:

"[A] factual-basis requirement that supports an admission that the child is abused, neglected, or dependent can be no more burdensome for the State than that required in a criminal context, where a defendant's personal liberty may be at risk." *Id.* ¶ 54.

The reviewing court concluded that the trial court had a sufficient factual basis to accept the respondent's admission. *Id.* ¶ 57. The reviewing court emphasized that, similar to a criminal proceeding, the factual-basis requirement is satisfied if evidence exists anywhere in the record from which the trial court could reasonably conclude that the minor was abused, neglected, or dependent. See *id.* ¶ 56 (citing *People v. Bassette*, 391 Ill. App. 3d 453, 457 (2009) (noting that a factual basis to support a guilty plea is satisfied if the record contains evidence from which the trial court could reasonably conclude that the defendant committed the crime with the requisite intent, if any)).

¶ 24 While we are mindful of the Fourth District's comparison to Rule 402(c), we do not find that rule analogously applicable to an admission under section 2-21(1) of the Act. The plain language of Rule 402(c) expressly provides that it applies to a final judgment on a plea of guilty. Ill. S. Ct. R. 402(c) (eff. July 1, 1997). As noted above, section 2-21(1) instructs the trial court at the adjudicatory hearing to determine whether the child is abused, neglected, or dependent, not whether the parents are guilty of some conduct. See *In re Arthur H.*, 212 Ill. 2d at 466-67 (citing 705 ILCS 405/2-21(1) (West 2000)); *In re J.W.*, 386 Ill. App. 3d at 855. We maintain that, in this case, so long as the respondent's stipulation did not violate her right to due process, and the trial court specified that it found the minors neglected pursuant to respondent's stipulation to count I of the amended petitions, the trial court had a sufficient factual basis to accept that stipulation. As previously discussed, because this case is distinguishable from *In re M.H.*, we do not believe that due process required the trial court to elicit a factual basis before accepting respondent's stipulation.

¶ 25 In any event, like the trial court in *In re C.J.*, the trial court here could have relied on any evidence in the record allowing it to reasonably conclude that the minors were neglected. At the July 22, 2011, hearing, the guardian *ad litem* from the family court proceeding stated that she had prepared a report for the trial court, and the trial court acknowledged that it reviewed that report. The guardian *ad litem* further stated that she did "quite a bit of investigation" in

this case and informed the trial court of her concerns regarding the welfare of the minors, including Bill L.'s drug overdose. Thereafter, in moving for a shelter-care hearing, the State advised the trial court that the parties' various positions with respect to returning the minors to Illinois from Tennessee were proffers for what the evidence at a shelter-care hearing would demonstrate. Respondent and her attorney were present at the July 22, 2011, hearing and agreed to forgo the shelter-care evidentiary hearing on the basis that respondent would return the minors to Illinois. The trial court could have also properly relied on the representations and report from the guardian *ad litem* as a factual basis for respondent's stipulation that the minors were neglected. See *In re C.J.*, 2011 IL App (4th) 110476, ¶ 56 (citing *Bassette*, 391 Ill. App. 3d at 457).

¶ 26    The dissent maintains that the trial court failed to "perform its statutory duty as to the stipulation." *Infra* ¶ 46. The dissent emphasizes that the purpose of the factual-basis requirement pursuant to section 2-21(1) is to give the parties notice of the reasons forming the basis for removal and to preserve that reasoning for appellate review. *Infra* ¶ 46. The dissent further states that "whatever due process may require, section 2-21(2) requires that the factual basis contemplated by section 2-21(1) be provided in whole before the court may proceed to a dispositional hearing." *Infra* ¶ 51.

¶ 27    Initially, we note that the dissent does not claim that the trial court's reason for its finding of neglect, Bill L.'s drug use, is not in the record or was not adequately preserved for appellate review. Instead, the dissent appears to focus on whether the parties, and specifically respondent, had notice of Bill L.'s drug use when the trial court made its finding of neglect.

¶ 28    More important, by focusing on strict compliance rather than a review of the entire proceedings, the dissent advocates that statutory formality should trump substance. See *Township of Jubilee v. State*, 2011 IL 111447, ¶ 35 ("[I]t is axiomatic that in matters of statutory construction, we cannot allow formality to trump substance where the result would be contrary to the purposes for which the statute was enacted ***."). As our supreme court has stated, "The purpose of the Act is to secure care and guidance for minors and to serve the 'safety and moral, emotional, mental and physical welfare' of minors and the best interest of the community." *In re Madison H.*, 215 Ill. 2d 364, 373 (2005) (quoting 705 ILCS 405/1-2(1) (West 2002)). Toward that end, "The Act is to be 'liberally construed' to carry out its stated purpose and policy." *Id.* at 374 (quoting 705 ILCS 405/1-2(4) (West 2002)).

¶ 29    Here, as noted above, the transcript from the July 22, 2011, hearing, which respondent attended with her attorney, clearly reflects that the State based its neglect petitions, in part, on Bill L.'s drug use and that the parties were aware of that basis. During the hearing, the trial court entertained argument from the parties concerning the best interests of the minors and considered the testimony and report from the guardian *ad litem* in a related family law proceeding. That guardian *ad litem* noted that Bill L. died of a drug overdose. Respondent's attorney asked the guardian *ad litem* from the family proceeding about her interaction with the minors. To reverse now–when the record unequivocally demonstrates that the parties and the trial court were aware of the factual basis for the State's petition, and thus for respondent's stipulation–merely because the trial court did not specifically recite that factual basis would contravene the underlying purpose of the Act. Therefore, because the Act must be liberally construed to carry out its stated purpose (*id.*), we conclude that the trial court

complied with sections 2-21(1) and (2) of the Act when it found the minors neglected pursuant to respondent's stipulation.

¶ 30     The dissent further cites *In re Johnson*, 102 Ill. App. 3d 1005 (1981). We do not find that case applicable here. In *Johnson*, the court held that the appellant's admission was not made knowingly and voluntarily because "[t]he record *** is *** devoid of any indication that appellant understood the consequences of his admission." *Id.* at 1013. The court noted that the trial court did not specify to the appellant the consequences of his admission, and neither did the assistant public defender, who represented the appellant when he entered his admission. *Id.* Significantly, in *Johnson*, the attorney appointed to represent the appellant was not present at the hearing when the appellant entered his admission, and the assistant public defender the trial court appointed to represent him at that hearing also represented the mother. *Id.* at 1009.

¶ 31     *Johnson*'s unique circumstances do not exist here. As the dissent acknowledges, respondent was admonished at the onset of the proceedings. She was represented by counsel both at the July 22, 2011, hearing and at the hearing when she stipulated to an allegation of neglect. At the latter hearing, and before her stipulation, her attorney advised the trial court that he was "on the same page as the State."

¶ 32     In sum, we conclude that respondent's right to due process was not violated when at the adjudicatory stage the trial court accepted her stipulation of neglect without inquiring as to the factual basis. The State has a compelling interest in expediting adjudicatory hearings because those hearings are concerned solely with whether minors are abused, neglected, or dependent and do not adjudicate parents "guilty" of anything. In addition, the risk that respondent would be deprived of her fundamental interest in the care, custody, and control of the minors at the adjudicatory stage is not the same as the risk at a termination hearing, as in *In re M.H.* Subsequent to the adjudicatory stage, respondent was afforded a full evidentiary hearing at the dispositional stage and had an opportunity to correct any errors. We further conclude that the trial court complied with section 2-21(1), because it expressly stated that its findings of neglect were based on respondent's stipulation, and the record reflects that the trial court heard arguments, and the parties were aware, of the State's factual basis for its neglect petitions. However, we caution trial courts that the better practice is to either elicit a factual basis or summarize on the record a factual basis from the existing record when accepting a stipulation of abuse, neglect, or dependency from a respondent.

¶ 33     We next consider respondent's contention that the trial court's adjudication of neglect was against the manifest weight of the evidence. Respondent argues that the only facts she stipulated to were that the minors were neglected because Bill L. had a substance abuse problem, impairing his parenting abilities. According to respondent, because Bill L. was deceased when the State filed its petitions, the trial court's finding of neglect was against the manifest weight of the evidence.

¶ 34     Respondent's argument is unavailing. The term "neglect" generally means "failure to exercise the care that circumstances justly demand." (Internal quotation marks omitted.) *In re C.R.*, 191 Ill. 2d 338, 346 (2000). Our supreme court has emphasized that the term "neglect" has a fluid meaning that embraces willful as well as unintentional disregard of

duty, and its meaning can vary depending on the circumstances. *In re Arthur H.*, 212 Ill. 2d at 463. In addition, the term "injurious environment" is broad but is generally understood to include the breach of a parent's duty to ensure a safe and nurturing shelter for the children. *Id.* Finally, our legislature has clearly stated that the purpose of an adjudicatory hearing is to determine whether an allegation that a minor is neglected is supported by a preponderance of the evidence, and the statute makes no mention of the trial court determining the party responsible for the child's neglect or assessing proportionate blame. *Id.* at 465 (quoting 705 ILCS 405/1-3(1) (West 2000)).

¶ 35    In the current matter, the trial court's determination that the minors were neglected, based on respondent's stipulation to the allegation in count I of the amended petitions, was not against the manifest weight of the evidence. The amended petition alleged that Bill L., A.L.'s father and B.C.'s and E.C.'s stepfather, had a substance abuse problem that impaired his parenting ability and placed the minors at risk of harm. Illinois reviewing courts have held that a finding of neglect is proper even if only one parent is responsible for creating an injurious environment due to substance abuse. See *In re Chyna B.*, 331 Ill. App. 3d 591, 593-96 (2002).

¶ 36    Moreover, that Bill L. was deceased did not render the alleged neglect cured. As noted, the purpose of an adjudicatory hearing is to determine whether an allegation that a minor is neglected is supported by a preponderance of the evidence, not to assign blame to the parents (*In re Arthur H.*, 212 Ill. 2d at 465), and the trial court is vested with wide discretion in determining whether a minor is neglected (see *In re R.S.*, 382 Ill. App. 3d at 459-60 (emphasizing the "wide" discretion a trial court has due to the "delicacy and difficulty" of child custody determinations)). Here, respondent could have stipulated that Bill L. had a substance abuse problem, but submitted additional evidence at the adjudicatory stage to demonstrate that the neglect was cured as a result of Bill L.'s death. Instead, respondent stipulated that Bill L. had a substance abuse problem that impaired his parenting and placed the minors at risk of harm and she did not submit any additional evidence. As a result, the only evidence before the trial court at the adjudicatory stage was respondent's stipulation. Given the wide discretion afforded to the trial court, it could have concluded that the risk of harm was still present after Bill L. died. *Cf. In re R.W.*, 401 Ill. App. 3d 1100, 1107 (2010) (ruling that the trial court's finding of an injurious environment resulting from unclean living conditions was against the manifest weight of the evidence because the living conditions were cleaned before the neglect petitions were filed). Therefore, because cases involving allegations of neglect are *sui generis* and must be decided on the basis of their unique circumstances (see *In re Arthur H.*, 212 Ill. 2d at 463), combined with a deferential standard of review and the evidence before the trial court at the adjudicatory hearing, we conclude that the trial court's finding of neglect was not against the manifest weight of the evidence. In reaching our determination, we again emphasize that the record clearly reflects that respondent had an opportunity at the dispositional stage of the proceedings to submit evidence demonstrating that, because Bill L. was deceased, it was in the minors' best interests that they not be made wards of the court or adjudicated neglected.

¶ 37                    B. Jurisdiction for Dispositional Stage

¶ 38    Respondent's second contention on appeal is that the trial court lacked jurisdiction to proceed to the dispositional hearing and enter a dispositional order, because there was insufficient evidence to support the trial court's adjudication of neglect. Because we already concluded that the trial court's adjudication of neglect did not violate respondent's right to due process and was not against the manifest weight of the evidence, the trial court properly proceeded to a dispositional hearing, as provided in section 2-21(2) of the Act. 705 ILCS 405/2-21(2) (West 2010).

¶ 39                             III. Conclusion

¶ 40    For the aforementioned reasons, we affirm the judgments of the circuit court of Winnebago County.

¶ 41    Affirmed.

¶ 42    JUSTICE BIRKETT, dissenting:

¶ 43    I respectfully disagree with the majority that respondent's stipulation supported the trial court's determination of neglect. Like the majority, I distinguish between the procedural and substantive sufficiency of the stipulation. Unlike, the majority, however, I find the stipulation neither procedurally nor substantively adequate.

¶ 44    Count I of the petitions originally alleged that the minors' environment "is injurious to [their] welfare in that [A.L.] was left in the care of [his] deceased father [Bill L.], placing the minor[s] at risk of harm." At the adjudicatory hearing, the State moved to amend count I to allege that the minors' "environment is injurious to [their] welfare in that *** [Bill L.] had a substance abuse problem that impaired his ability to parent[,] placing the minor[s] at risk of harm."[1] Following the amendment, the State announced that respondent "would be factually stipulating to the Amended Count, and the State would move to dismiss Counts 2 and 3 on their motion, with the understanding that services could be determined and parents would cooperate with services based on the dismissed counts." The State then immediately addressed the issue of the scheduling of the dispositional hearing. After a lengthy discussion, the parties and the court agreed on a date. The court then recognized that it had not yet formally accepted the stipulation:

        "We are not done yet.

        Pursuant to the agreement recited by the State, agreed to by the parties, the Court adjudicates the minors to be neglected pursuant to [respondent's] factual stipulation to Amended Count 1 of the Petition, Petitions. The other counts of the Petitions, Counts 2 and 3, are hereby dismissed on motion of the State."

_____

        [1]I have quoted one of the petitions. Amended count I is worded differently in all three petitions, but the variations are slight and do not affect the substance of the allegation.

¶ 45　　The court's written order entered the same day recited that the court was finding the minors neglected pursuant to the "factual stipulation by [respondent] as to Count 1 as amended."

¶ 46　　The court failed, I submit, to perform its statutory duty as to the stipulation. Section 2-21(1) of the Act provides in relevant part:

> "If the court finds that the minor is abused, neglected, or dependent, the court shall then determine and put in writing the factual basis supporting the determination, and specify, to the extent possible, the acts or omissions or both of each parent, guardian, or legal custodian that form the basis of the court's findings. That finding shall appear in the order of the court." 705 ILCS 405/2-21 (West 2010).

While the factual basis need not be in writing (*Madison H.*, 215 Ill. 2d at 374-75), the trial court's findings, whether oral or written, must fulfill the purpose of section 2-21(1)'s factual-basis requirement, which is

> "to give the parties notice of the reasons forming the basis for the removal of the child and to preserve this reasoning for appellate review. Explicit oral findings stated during a dispositional hearing advise the parties of the basis for the removal of the minor and, once transcribed, provide an equal opportunity to review the validity of the findings on appeal as well as written findings contained in an order." *Id.*

¶ 47　　Although *M.H.*, discussed at length by the majority, dealt with a stipulation to unfitness, the supreme court's comments illuminate the requirements of section 2-21(1) as well. The respondent in *M.H.* argued that a stipulation to unfitness is not valid unless the trial court determines that a factual basis exists for the stipulation. There is no statutory requirement of a factual basis for a stipulation to unfitness; the respondent in *M.H.* argued instead that due process mandates a factual basis. The supreme court considered section 2-21, governing findings of neglect, as a guide in determining the requirements of due process in regard to findings of unfitness:

> "A factual-basis requirement ensures that the State has a basis for its allegation of unfitness. In addition, a factual-basis requirement makes certain that a parent's admission of unfitness is knowing and voluntary. Illinois courts have held that in a neglect proceeding, pursuant to [section 2-21], circuit courts must state in writing the factual basis supporting the determination that a minor is abused, neglected, or dependent. [Citation.] The purpose of this statutory requirement is to set forth the grounds for termination of parental rights if no reasonable efforts were made by the parent to correct the grounds in the original adjudication of the child. [Citation.] This requirement puts the parent on notice as to what is required of her in the future as to rehabilitation or progress to be made with regards to her children. It is clear that if sufficient facts must be presented to and found by the court in determining abuse, neglect, or dependence, then a factual-basis presentation must be required for a finding of unfitness as well.
>
> Illinois courts have also held that admissions under the Juvenile Court Act must be voluntarily and intelligently made. [Citations.] *** [F]or a parent's admission to be valid in an adjudicatory phase of a neglect proceeding it must be intelligently and voluntarily made. [Citation.] This knowing and voluntary requirement protects a parent from

-14-

admitting to neglect or abuse when their conduct does not fall within the State's allegations.

Clearly, if an admission of neglect must be knowing and voluntary, then an admission of unfitness must also be knowing and voluntary. The factual basis allows the parent to hear the State describe the alleged facts relating to fitness and gives the parent an opportunity to challenge or correct any facts that are disputed. Without a factual basis, 'there is a danger that a parent may understand the State's alleged grounds of unfitness but may not realize that his or her conduct does not fall within those allegations.' [Citation.] Thus, if a parent is not fully informed of the factual basis underlying the State's allegations, the risk is increased that her parental rights will be erroneously terminated because of an ill-advised admission of unfitness." *M.H.*, 196 Ill. 2d at 365-67.

¶ 48    In the foregoing, the supreme court reasoned that, if a factual basis is required for a stipulation to neglect, it must also be required for a stipulation to unfitness. The majority and I disagree as to whether the procedural protections that *M.H.* imposed for unfitness stipulations apply equally to neglect stipulations. The majority believes that *M.H.* is "distinguishable" because a finding of unfitness carries greater finality than a finding of neglect. *Supra* ¶ 24. Therefore, reasons the majority, the "due process" concerns articulated by the court in *M.H.* do not require the trial court "to elicit a factual basis *before* accepting respondent's stipulation" to neglect. (Emphasis added.) *Supra* ¶ 24.

¶ 49    I do not agree that *M.H.* is distinguishable. The majority errs in construing *M.H.* as requiring a due process analysis for determining whether the trial court must "inquire as to the factual basis of [a neglect] stipulation before accepting it."[2] *Supra* ¶ 12. To interpret *M.H.* in this way is to invert its analysis. *M.H.* never recognized the criteria for a neglect finding to be a creature of constitutional law. Rather, it was the criteria for an *unfitness* stipulation that *M.H.* recognized as proceeding from the constitutional norms, and the court derived those criteria by first considering an analogous statutory requirement, namely, section 2-21(1), which governs neglect determinations at the adjudicatory stage. The court concluded, as quoted above, "that if sufficient facts must be presented to and found by the court in determining abuse, neglect, or dependence, then a factual-basis presentation must be required for a finding of unfitness as well." *M.H.*, 196 Ill. 2d at 366. I cannot read this but to imply that the same protections must be afforded at the termination stage as at the adjudicatory stage. The majority, however, thinks differently, and holds that a trial court may accept a stipulation to neglect without "inquiring as to the factual basis" but may not omit this preliminary step in the case of a stipulation to unfitness. *Supra* ¶ 32. As the majority does not elaborate, the reader is left to surmise what difference the majority sees between "inquiring as to the factual basis" for a determination of neglect (the majority's own phrase) and "determin[ing] *** the factual basis" (section 2-21(1)'s phrase). While I cannot conceive what the majority has in mind, I am convinced that it is drawing a line where none is permitted. There is no indication in *M.H.* that the court was imposing stricter standards at the

---

[2]The majority alternatively frames the issue as whether the trial court must "elicit" a factual basis before accepting the stipulation. *Supra* ¶ 24.

termination stage than at the adjudicatory stage. The majority believes that the termination stage carries greater finality than the adjudicatory stage, but the *M.H.* court never intimated such a belief–nor was it a necessary premise for its conclusion that a factual basis must be established for an unfitness stipulation. *M.H.*'s holding required nothing other than a belief that the termination stage is as procedurally important as the adjudicatory stage and, hence, that if a factual basis is required for a neglect stipulation, it must be required for an unfitness stipulation. Thus, the protections that the supreme court described as governing the termination stage, *e.g.*, that the parent must be "fully informed of the factual basis underlying the State's allegations" (*M.H.*, 196 Ill. 2d at 367), apply equally to the adjudicatory stage.

¶ 50    The majority finds in *A.A.* further support for disparate treatment of neglect and unfitness stipulations. In the concluding paragraph of its analysis, the court in *A.A.* wrote:

> "Therefore, we hold that a sufficient factual basis for the adjudication [of neglect] was presented to the court by way of the parents' admission at the adjudicatory hearing *and the additional evidence presented at the termination hearing*. The due process rights of the parents herein were not violated by this procedure." (Emphasis added.) *A.A.*, 324 Ill. App. 3d at 240.

¶ 51    The *A.A.* court did not mention section 2-21(1), but applied due process principles alone. Perhaps, unlike here, the respondents did not invoke section 2-21(1). I express no opinion on whether the procedure in *A.A.* satisfied due process requirements; my concern rather is that *A.A.* could be erroneously interpreted to speak as to what section 2-21(1) requires. It is clear to me that, whatever section 2-21(1) requires in terms of a factual basis (a topic I address below), this requirement cannot be satisfied partly at the adjudicatory stage and partly at the termination stage–a process the court in *A.A.* approved as consistent with due process requirements. Rather, the factual-basis requirement of section 2-21(1) is a prerequisite to further proceedings. Section 2-21(2) of the Act (705 ILCS 405/2-21(2) (West 2010)) provides:

> "If, pursuant to subsection (1) of this Section, the court determines and puts in writing the factual basis supporting the determination that the minor is either abused or neglected or dependent, the court shall then set a time not later than 30 days after the entry of the finding for a dispositional hearing *** to be conducted *** at which hearing the court shall determine whether it is consistent with the health, safety and best interests of the minor and the public that he be made a ward of the court."

"A finding of abuse, neglect or dependence is jurisdictional, without [which] the trial court lacks jurisdiction to proceed to an adjudication of wardship." (Internal quotation marks omitted.) *Arthur H.*, 212 Ill. 2d at 464. Thus, whatever due process might require, section 2-21(2) requires that the factual basis contemplated by section 2-21(1) be provided in whole before the court may proceed to a dispositional hearing. *A.A.*'s holding, which was based on due process principles alone, cannot be extended to section 2-21. The majority makes reference to respondent's opportunity at the dispositional hearing to correct any errors that occurred in the taking of the stipulation to neglect. *Supra* ¶ 19. A dispositional hearing cannot retroactively cure a section 2-21(1) problem, as compliance with that section is the jurisdictional threshold to the dispositional stage.

¶ 52   The foregoing shows that the majority errs by reading into *M.H.* a distinction between the factual-basis requirements for neglect and unfitness stipulations–a distinction that the reader can at best gather is between "inquiring as to the factual basis" (the majority's phrase) and "determin[ing] *** the factual basis" (section 2-21(1)'s phrase).

¶ 53   I now turn to the crux of this appeal, which is what section 2-21(1) itself requires for a factual basis. Section 2-21(1)'s requirement that the court "determine *** the factual basis supporting the determination" is phrased similarly to Rule 402(c), which states: "The court shall not enter final judgment on a plea of guilty without first determining that there is a factual basis for the plea." Ill. S. Ct. R. 402(c) (eff. July 1, 1997). Given this linguistic affinity, *C.J.* was justified in using Rule 402(c) to guide its interpretation of section 2-21(1). "Words having well-defined common law meanings are interpreted to have the same meanings when used in statutes dealing with similar subject matter." *People v. Sergey*, 137 Ill. App. 3d 971, 975 (1985). Case law on Rule 402(c) is abundant, while case law on section 2-21(1) is sparse.

¶ 54   The majority denies that a guilty plea is "analogous" to a determination of neglect, because "[t]he plain language of Rule 402(c) expressly provides that it applies to final judgment on a plea of guilty," while "section 2-21(1) instructs the trial court at the adjudicatory hearing to determine whether the child is abused, neglected, or dependent, not whether the parents are guilty of some conduct." *Supra* ¶ 24. The majority simply conflates the substantive and procedural requisites for a finding of neglect. There is no question that abuse, neglect, and dependency under the Act are legally distinct from crimes. Yet while the factual bases for guilty pleas and neglect determinations may have different substantive content (owing to different substantive standards), they might have similar procedural requisites. It is the procedural kinship alone that interested *C.J.*, and now interests me.

¶ 55   I first point out one important procedural difference between Rule 402(c) and section 2-21(1). Doing so also highlights that the majority appears not to find Rule 402(c) as disanalogous as it claims. The majority asserts that the trial court "could have relied on any evidence in the record allowing it to reasonably conclude that the minors were neglected." *Supra* ¶ 25. This assertion is, in fact, a principle recognized in the case law on Rule 402(c), and it reveals that the majority is at least ambivalent about the rule's pertinence. What constitutes a factual basis under Rule 402(c) has been explained numerous times in the case law. The following is a representative statement:

"The factual basis for a guilty plea generally consists of either an express admission by the accused that he committed the acts alleged in the indictment or a recital of evidence to the court which supports the allegations in the indictment. [Citations.] *Rule 402(c) is satisfied, however, if there is a basis anywhere in the record up to the entry of the final judgment from which the judge could reasonably reach the conclusion that the defendant actually committed the acts with the intent (if any) required to constitute the offense to which he is pleading guilty*. [Citations.]" (Emphasis added.) *People v. Vinson*, 287 Ill. App. 3d 819, 821 (1997).

¶ 56   The majority, applying the italicized language, holds that a factual basis for the neglect stipulation in this case could have been found in the report that the guardian *ad litem*

generated for the July 22, 2011, pretrial conference as well as in the guardian's numerous references at that hearing to past misconduct by respondent. I cannot agree. The majority is correct that my concern is the "notice" to respondent. *Supra* ¶ 27. As I read *M.H.*, the factual-basis requirement in section 2-21(1) serves a distinct notice function in addition to an evidentiary function. As the court explained, "[the] requirement puts the parent on notice as to what is required of her in the future as to rehabilitation or progress to be made with regards to her children." *M.H.*, 196 Ill. 2d at 366. The court went on to describe the purpose that the factual-basis requirement serves with respect to an unfitness stipulation. As I noted above, *supra* ¶ 49, the comments by the *M.H.* court apply equally to neglect determinations and in fact are not substantively different from what the court had said about neglect determinations. Regarding an unfitness stipulation, the court said that the parent must be "fully informed of the factual basis underlying the State's allegations." *M.H.*, 196 Ill. 2d at 367. Thus, even if a neglect determination is objectively grounded in the record, it will not be valid unless the parent is fully informed of the record support for the alleged facts that, if true, would support the determination. If the court in *M.H.* believed that a factual-basis requirement were simply a matter of whether a stipulation to neglect is objectively grounded, then the court would have been satisfied if there were caseworker reports or other documents somewhere in the record to corroborate the State's allegations. Instead, the court's overarching concern was the notice provided to the parent, which the court held must be "full[ ]." *Id.*

¶ 57     Here, when the stipulation was tendered, neither the State, nor the trial court, nor respondent's attorney identified for respondent the sources or materials that the majority now claims support the neglect determination. Indeed, there were simply no references to any existing or anticipated evidentiary support for the neglect determination. The State simply stated that respondent would stipulate to the allegations in count I of the amended petitions. Certainly, the allegations contained some factual specificity, but this was insufficient by itself since respondent was not informed "of the factual basis *underlying* the State's allegations" (emphasis added) (*id.*).

¶ 58     It is telling that the majority accuses me of insisting on strict compliance with section 2-21(1), for this suggests that the majority recognizes that the approach I urge is the one actually dictated by the plain text of the statute. The majority, however, believes that to insist on strict compliance with section 2-21(1) is to elevate procedural exactitude over the purpose of the Act, which is the protection of minors. The majority cites *Madison H.*'s observation that the Act itself states that it is to be " 'liberally construed.' " *Madison H.*, 215 Ill. 2d at 374 (quoting 705 ILCS 405/1-2(4) (West 2002)). *Madison H.* undermines, not supports, the majority's insistence on liberal construction here. While *Madison H.* held that it would be unduly formalistic to insist on a particular vehicle (written as opposed to oral delivery) for the findings that constitute the factual basis required by section 2-21(1), the court did not intimate that there was any flexibility as to what the factual basis itself must accomplish, that is, to notify the parent "of the reasons forming the basis for removal of the child and to preserve this reasoning for appellate review." *Id.* The majority believes that its liberal interpretation of section 2-21(1) is appropriate given the State's "compelling interest in expediting adjudicatory hearings," which "are concerned solely with whether minors are

-18-

abused, neglected, or dependent and do not adjudicate parents 'guilty' of anything." *Supra* ¶ 32. The majority also notes that a neglect determination does not carry the same decisiveness or finality as a termination ruling. *Supra* ¶ 32. The majority's apparent source for these statements is *A.A.*, but, as I explained above (*supra* ¶¶ 50-51), *A.A.* addressed what due process requires, not what section 2-21(1) requires. As I also explained (*supra* ¶ 49), *M.H.* provides no justification for believing that section 2-21(1) requires less of a factual basis for a neglect stipulation than due process requires for an unfitness stipulation. Rather, the court in *M.H.* took section 2-21(1) as a model for what due process ought to require for an unfitness stipulation.

¶ 59 The majority's distinction not only lacks a sound basis in case law but also fails as a matter of policy. At the adjudicatory stage, "[t]he issue *** is whether the minor is neglected, not whether one or both of the minor's parents are responsible for the neglect." *In re A.W.*, 231 Ill. 2d 92, 103 (2008). The fact that a neglect finding need not charge the parent with any kind of wrongdoing does not diminish its significance. Whether or not the neglect finding is personalized to the parent, it will lead to an intensely personal process. It is a process in which the parent is continually placed on the defensive and faces a heavy burden in proving herself fit to have the child returned–even though she might not have been responsible for the condition that led to the removal of the child. See *In re D.D.*, 309 Ill. App. 3d 581, 589 (2000) (the respondent was incarcerated when his child was born and remained so when the child was adjudicated neglected and removed from the mother's custody on the ground that he was born with cocaine in his system). The majority has inverted the significance of a neglect finding. Such a finding has no less impact because it begins rather than ends the process under the Act; rather, it has monumental impact *because* it begins a process that is heavily weighted against the parent. As I noted above (*supra* ¶ 49), I cannot determine what the majority believes must be presented in the way of a factual basis at the adjudicatory stage. The majority says only what is not necessary, namely, for the trial court to "inquir[e] as to" (*supra* ¶ 32) or "elicit" (*supra* ¶ 24) the factual basis–but even here the majority does not elaborate. From the majority's wholesale endorsement of *A.A.*'s holding, which is essentially that the factual basis for a neglect determination may be developed piecemeal throughout the proceedings under the Act, I fear that today's opinion will be taken to justify *pro forma* and perfunctory adjudications contrary to the supreme court's dictates in *M.H.* and disregarding the rights of parents.

¶ 60 Returning to my Rule 402(c) analogy, I suggest that *M.H.* does not permit courts to apply to neglect determinations the fail-safe rule in Rule 402(c) jurisprudence that allows a guilty plea to be grounded in any basis in the record regardless of whether the defendant is apprised of that basis. With the fail-safe rule eliminated from consideration, the remaining ways a factual basis for a plea of guilty may be established include "(1) *** having the defendant state what he did; (2) *** having the prosecutor summarize the testimony expected to have been introduced at trial; (3) *** having the facts stated by witnesses; [and] (4) by examination of a presentence report" (*People v. Ginder*, 26 Ill. App. 3d 295, 299 (1975)). See also *People v. White*, 2011 IL 109616, ¶ 17 ("The factual basis for a guilty plea generally will consist of an express admission by the defendant that he committed the acts alleged in the indictment or a recital to the court of the evidence that supports the allegations in the

indictment."). Nothing analogous to any of these scenarios occurred here. Respondent neither made personal admissions on the record nor was directed to any evidence, existing or anticipated, supporting the State's allegations. Reasoning by analogy with Rule 402(c), I conclude that the factual-basis requirement of section 2-21(1) was not satisfied. Consequently, I agree with respondent that the trial court lacked authority to proceed to a dispositional hearing.

¶ 61        Respondent's second argument on procedural sufficiency is that her neglect stipulation was not knowing and voluntary because the trial court failed to inform her of the procedural consequences of the stipulation. She cites only one case, *Johnson*, 102 Ill. App. 3d 1005. *Johnson* applies the principle, which the majority does not question, that a neglect stipulation "must be intelligently and voluntarily made; that is, it must be apparent from the record that the party making the admission was aware of the consequences of his admission." *Id.* at 1012. In *Johnson*, the record was "completely devoid of any indication that [the respondent] understood the consequences of his admission [to neglect]." *Id.* at 1013. Apparently, the respondent in *Johnson* received no admonitions at any point in the process. Here, by contrast, at respondent's May 18, 2011, initial appearance, the trial court described the various stages of proceedings under the Act and advised respondent that a neglect finding could lead ultimately to termination of her parental rights. Respondent, however, did not stipulate to neglect until August 10, 2011, yet was given no fresh admonitions. Despite the factual differences between this case and *Johnson*, I cannot agree that the record reflects that respondent was aware of the procedural consequences of her stipulation to neglect.

¶ 62        The majority also reaches the issue of the substantive sufficiency of the stipulation. From a strict procedural standpoint, the lack of a factual basis precludes this court from addressing substantive sufficiency even in the alternative, as, contrary to *M.H.*, no support was adduced for the neglect allegation, and one can only speculate as to what support could have been provided. I point out only my puzzlement at the majority's claim that the determination of neglect must stand because respondent failed to adduce "additional evidence at the adjudicatory stage to demonstrate that the neglect was cured as a result of Bill L.'s death." *Supra* ¶ 36. The majority claims that, such evidence being absent, it was within the trial court's discretion to "conclude[ ] that the risk of harm was still present after Bill L. died." *Supra* ¶ 36. Again, count I of each petition alleged that there was an injurious environment in that "[Bill L.] had a substance abuse problem that impaired his ability to parent[,] placing the minor[s] at risk of harm." Thus, the only harm that count I associated with Bill L.'s drug problem was harm from Bill L. himself. Bill L., however, could not have outlasted himself; when he died he ceased to parent badly because he ceased to parent altogether. This was obvious; no "additional evidence" was needed.

¶ 63        The majority tacitly distinguishes *R.W.*, but in that case, unlike here, there was at least a possibility that the conditions–a cluttered yard and house–that were alleged to constitute neglect could recur. Though the respondent in *R.W.* had cleaned up the mess before the neglect petition was filed, she had the capability of reverting to her former lifestyle. Despite this and the fact that the mess had been a recurring problem, the appellate court dismissed as "speculative" any "fear of relapse." *R.W.*, 401 Ill. App. 3d at 1107. Here, it would be more properly superstition than speculation to entertain the possibility that Bill L. could continue

*post mortem* to present a risk of harm through poor parenting. The majority defers to the trial court but cannot even venture to guess what specific "risk of harm" persisted after Bill L. died. Even if the trial court could have properly departed from the language of the petitions and considered whether *respondent herself* presented a continuing risk of harm, no facts were adduced in connection with the stipulation to suggest that she was a potential source of danger.[3] Respondent was apprised of no facts showing, for instance, that she knew or should have known of Bill L.'s drug problem and thereby displayed poor judgment that might enable further injurious situations. *Cf.* 705 ILCS 405/2-3(1)(a) (West 2010) ("a minor shall not be considered neglected for the sole reason that the minor's parent or parents or other person or persons responsible for the minor's welfare have left the minor in the care of an adult relative for any period of time, who the parent or parents or other person responsible for the minor's welfare know is both a mentally capable adult relative and physically capable adult relative, as defined by this Act"). I conclude that the stipulation was substantively insufficient.

¶ 64      For the foregoing reasons, I would reverse and remand for a new adjudicatory hearing.

---

[3]Notably, count III, which alleged that respondent herself had a drug problem, was dismissed by the State when the stipulation was presented.