2024 IL App (2d) 240146-U
No. 2-24-0146
Order filed July 8, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* XANDER R., XAVION R., and XADEN R., Minors | ) ) ) ) ) ) ) ) ) ) ) | Appeal from the Circuit Court of McHenry County<br><br><br>Nos. 23-JA-108, 23-JA-109, 23-JA-110<br><br><br>Honorable |
| (The People of the State of Illinois, Petitioner-Appellee, v. Ieisha R., Respondent-Appellant). | | Mary H. Nader, Judge, Presiding. |

PRESIDING JUSTICE McLAREN delivered the judgment of the court.
Justices Schostok and Birkett concurred in the judgment.

**ORDER**

¶ 1  *Held*:  Trial court properly determined that minors were neglected where respondent left them alone for a day and a half while she used drugs, admitted to continued drug use after DCFS became involved but while the minors were still in her care, and, after admitting herself to a psychiatric facility for suicidal ideations, reported to DCFS that she wanted to surrender her rights of her children to her sister and brother. Affirmed.

¶ 2  Respondent, Ieisha R., mother of the minors, Xander R., Xavion R., and Xaden R., seeks reversal of the trial court's dispositional order finding her unfit and unable to care for the minors and placing their guardianship and custody with the Department of Children and Family services (DCFS). For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     The State filed a petition for adjudication of wardship alleging that the minors—Xander R., born November 9, 2018; Xavion R., born April 2, 2014; and Xaden R, born March 1, 2012—were neglected minors pursuant to 705 ILCS 405/2-3(1)(a), (b), and (d) (West 2020), abused minors pursuant to *id.* 2-3(2)(ii), and dependent pursuant to *id.* 2-4(1)(d). An adjudication hearing was scheduled for January 18, 2024.

¶ 5     At the hearing, DCFS caseworker Phylicia Ranes testified that a hotline call was received in August 2023 alleging that respondent left the minors home alone, unsupervised. To investigate the allegations, she spoke with the two older minors at their respective schools. Xavion R. told her that they are home after school and respondent gets there between 2:45 and 4:00; he has a phone and they can call her anytime the youngest one, Xander R., becomes "too much of a ruckus." Xaden R. told her they are home after school, he has a phone, and he feels safe at home. Ranes also observed Xander R., who had just woken up from a nap and did not talk.

¶ 6     Ranes spoke with respondent on the phone. Respondent admitted to being a recovering crack cocaine user. On August 31, 2023, Ranes met with respondent at the family home. Respondent admitted that she left the children at home. The last time she used cocaine was about a month prior, when she used drugs, she left the minors at home alone. She said the longest she would leave them alone was about a day and a half. Rane gave respondent a drug test that came back negative and offered intact family services, which respondent accepted.

¶ 7     Ashley Peters, an intact case worker at the Community Youth Network, testified that she was assigned to the minors' case. Peters recommended that respondent participate in parenting, mental health, and substance abuse services. On October 4, 2023, Peters notified respondent that she had been referred for her random weekly drug screen that day, but respondent disclosed that

she would fail the drug screen because she began using cocaine again. An out-of-home safety plan was put in place, pursuant to which the minors were placed with their maternal aunt. On October 5, 2023, respondent informed Peters that she admitted herself to a psychiatric facility for suicidal ideations. While hospitalized, respondent placed a DCFS hotline call on herself stating that she wanted to surrender her rights of her children to her sister and brother.

¶ 8     The court admitted into evidence three exhibits submitted by the State: the DCFS indicated packet, a September 2022 misdemeanor sentencing order for driving under the influence, and a November 2023 certificate of completion for alcohol/drug treatment.

¶ 9     Respondent offered no evidence or testimony but made a motion for a directed finding at the close of the State's evidence and renewed her hearsay objections to the minors' statements that were admitted during Rane's testimony. The court sustained the hearsay objections on the basis that there was no corroboration of the minors' statements. The court denied the motion for directed finding and found the minors' environment injurious by a preponderance of the evidence in that respondent left the children home alone, admitted to cocaine use, admitted herself to the hospital for suicidal ideations, called DCFS to give up her parental rights, and failed to appear at the hearing.

¶ 10    At the dispositional hearing on February 14, 2024, the court found respondent unfit and unable to care for the minor children. The minors were made wards of the court, and DCFS was made their guardian and custodian. The permanency goal was return home within 12 months.

¶ 11                                    II. ANALYSIS

¶ 12    The only issue raised on appeal is whether the trial court's decision adjudicating the minor children neglected is against the manifest weight of the evidence. The court's order reflects a

finding of neglect based on environment injurious, subsection (b) of the statute. 705 ILCS 405/2-3(1) (b) (West 2020).

¶ 13    A neglected minor includes "any minor under 18 years of age whose environment is injurious to his or her welfare." *Id.* (quoting 705 ILCS 405/2–3(1)(b) (West 2020)). "Generally, 'neglect' is defined as the failure to exercise the care that circumstances justly demand." (Internal quotation marks omitted.). *In re N.B.*, 191 Ill.2d 338, 346 (2000). An "injurious environment" is an "amorphous concept that cannot be defined with particularity," but includes "the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children." (Internal quotation marks omitted.) *In re Arthur H.*, 212 Ill. 2d 441, 463 (2004). "[C]ases involving allegations of neglect and adjudication of wardship are *sui generis*, and must be decided on the basis of their unique circumstances." *Id.* The State must prove neglect by the preponderance of the evidence, or establish that the allegations are more probably true than not. *Id.* at 463-64.

¶ 14    "Because of the 'fact-driven nature' of neglect and injurious environmental rulings, a reviewing court will reverse a finding of neglect only if it is against the manifest weight of the evidence." *In re A.L.*, 2012 IL App (2d) 110992, ¶ 13 (citing *In re N.B.*, 191 Ill. 2d 338, 346 (2000)). A ruling is against the manifest weight of the evidence only if the opposite conclusion is clearly evident, and "given the delicacy and difficulty of child custody determinations, the discretion vested with the trial court is even greater than in an ordinary appeal applying the manifest-weight-of-the-evidence standard of review." *Id.*

¶ 15    In this case, the minors ages were 4, 9, and 11. Respondent left them alone for a day and a half while she used drugs. Even if the minors had phones to contact her, she was likely to be in an impaired state. She admitted to continued drug use after DCFS became involved but while the minors were still in her care. Respondent had mental health issues that prevented her from

providing care for the minors. She received treatment for suicidal ideations and called the hotline to surrender her children. We cannot say that the opposite conclusion to the court's ruling that the children were neglected minors is clearly evident.

¶ 16    Respondent argues, and the trial court agreed, that the two minors' out-of-court statements to DCFS caseworker Ranes were inadmissible hearsay and, consequently, were not to be considered in determining that the children were neglected minors. Respondent and the court are incorrect. The Juvenile Act provides an exception to hearsay for statements made by minors relating to abuse or neglect if (1) the minor is subject to cross-examination about the statement, or (2) the occurrence of the abuse or neglect is corroborated by other evidence." *In re A.P.*, 179 Ill. 2d 184, 196 (1997); *In re An.W.*, 2014 IL App (3d) 130526, ¶ 62; 705 ILCS 405/2–18(4)(c) (West 2020). In addition, hearsay statements of multiple children are permitted to corroborate one another. *In re J.L.*, 2016 IL App (1st) 152479, ¶ 92.

¶ 17    Here, both Xavion R. and Xaden R. provided statements to Ranes about being left alone unsupervised and how they function when respondent is not present in the home. In addition, respondent made admissions to Ranes that she left the minors alone for periods of time when she used drugs. These statements and admissions corroborate each other. Even assuming, *arguendo*, they do not fit the Juvenile Act's hearsay exception, the evidence establishes that the court did not err in determining that the minors were neglected.

¶ 18    We remind respondent that her private interest in raising her children is mitigated at this stage of the proceedings by the fact that there is not a final or complete severance of the parent-child relationship and by the numerous opportunities she will be afforded over a lengthy period of time to regain custody. *In re April C.*, 326 Ill. App. 3d 225, 237 (2001); *In re A.A.*, 324 Ill. App. 3d 227, 239 (2001).

¶ 19                                III. CONCLUSION

¶ 20    For the reasons stated, we affirm the judgment of the circuit court of McHenry County.

¶ 21    Affirmed.