NOTICE
Decision filed 05/10/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 231298-U

NOS. 5-23-1298, 5-23-1299 cons.

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* HAIZLYNN C. and FELIX F., Minors | ) ) | Appeal from the Circuit Court of |
| (The People of the State of Illinois, | ) ) | Piatt County. |
| Petitioner-Appellee, | ) ) | |
| v. | ) ) | Nos. 23-JA-17, 23-JA-18 |
| Cynthia F., | ) ) | Honorable Dana C. Rhoades, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE BOIE delivered the judgment of the court.
Justices Moore and Sholar concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We affirm the judgment of the circuit court where the circuit court's findings that the minor children were neglected and that the respondent was unable were not contrary to the manifest weight of the evidence; and any argument regarding the circuit court's selection of the dispositional order is forfeited.

¶ 2    The respondent, Cynthia F., is the natural mother of Haizlynn C. (H.C.) and Felix F. (F.F.)[1] (minor children). On January 5, 2024, the circuit court entered a dispositional order finding that the respondent was unable, for reasons other than financial circumstances alone, to care for, protect, train, educate, supervise, or discipline the minor children. The circuit court further found that it was consistent with the health, welfare, and safety of the minor children, and in their best

_____

[1]H.C. born February 2017, and F.F. born July 2022.

1

interests, to make the minor children wards of the court. The circuit court then removed custody and guardianship of the minor children from the respondent, and placed custody and guardianship of the minor children with the guardianship administrator of the Illinois Department of Children and Family Services (DCFS).

¶ 3    The respondent appeals the circuit court's judgment and argues that the circuit court's finding that the minor children were neglected was against manifest weight of the evidence. The respondent also argues that the circuit court's dispositional finding of unable was against the manifest weight of the evidence, and that the circuit court abused its discretion in its selection of the dispositional order. For the following reasons, we affirm the judgment of the circuit court of Piatt County.

¶ 4                    I. BACKGROUND

¶ 5    On August 16, 2023, the respondent was involved in a domestic violence incident with Matthew F., the father of F.F.[2] Matthew was arrested as a result of the incident and the respondent obtained an order of protection the same day. On the petition for the order of protection, the respondent wrote the following:

> "Matthew and I have been together and married for almost four years. Shortly after I came pregnant with our son, he started to get physically violent with me; hitting me[,] head butting me, and choking me out. He would call me fat and lazy along many other names while I was pregnant. My son was born [date] and thankfully was born perfect. The abuse stopped but only for a short while and once it started again it seemed to only get worse.

---

[2]The putative father of H.C. is Storm C., who is currently incarcerated. The parental rights of the fathers are not at issue in this appeal. As such, we will limit the summarization of any background information regarding the fathers to that information relevant to the issues raised in this appeal.

2

*  *  *

Matt then picked up the baby who was asleep and screamed how he was taking his son and leaving. I tried to stop him and he hit me in the face and busted my nose. He took off down the road towards his grandparents.

*  *  *

I have been wanting to get help for awhile now just have been scared to because I don't want to loose [*sic*] my kids. But I have had enough and I am truly scared for my life at this point, so I am hoping that a OP will be granted and that my kids won't get taken and we can live peacefully and not in fear of what Matt is going to do next."

¶ 6     DCFS became involved with the family and met with the respondent. DCFS also spoke with the minor children,[3] who reported that they had not seen any fighting in the home but that they were at their grandmother's residence when the incident occurred. The respondent provided DCFS with a copy of the order of protection, but later, sent a text message to DCFS asking if the order of protection could be modified, and whether the order of protection had to remain in effect for two years. The respondent's text further stated that she needed Matthew at home since the respondent was stressed, and had a lot going on with the children, the house, and money. The respondent also contacted the Office of the State's Attorney asking the same questions. As such, DCFS met with an assistant state's attorney and a determination was made that DCFS should take protective custody of the minor children. Protective custody of the minor children was taken by DCFS on August 23, 2023.

---

[3]The DCFS's shelter care report of August 24, 2023, indicates that F.F. was present at the time of the incident, and that the respondent had "left the 3 older children at her mother['s] house." Only the respondent's parental rights regarding F.F. and H.C. are at issue in this appeal.

¶ 7     The State filed a petition for adjudication of neglect[4] (petition) pursuant to the Juvenile Court Act of 1987 (Act) (705 ILCS 405/1-1 *et seq.* (West 2022)), on August 24, 2023. The State's petition alleged that the minor children were neglected pursuant to section 2-3(1)(b) of the Act (*id.* § 2-3(1)(b)), due to being in an environment that was injurious to their welfare because the environment exposed the minor children to domestic violence.

¶ 8     The circuit court conducted a shelter care hearing the same day. The respondent was present, but not represented by counsel. The circuit court provided the respondent with an opportunity to continue the hearing until such time as counsel could be appointed, but the respondent requested that the hearing proceed. Upon completion of the hearing, the circuit court issued a temporary custody order finding that probable cause for the filing of the petition existed based on the respondent's report that Matthew had struck and "head-butted" the respondent during an argument while F.F. was present. The circuit court also found that there was an immediate and urgent necessity for the removal of the minor children from the home based on the respondent's report of the recent incident, and her report of a history of domestic violence committed by Matthew against the respondent. The circuit court further found that reasonable efforts had been made to keep the minor children in the home, but that such efforts had not eliminated the necessity to remove the minor children. As such, the circuit court placed temporary custody and guardianship of the minor children with the guardianship administrator of DCFS.

¶ 9     An adjudication hearing was conducted by the circuit court on November 20, 2023. The respondent was present and represented by counsel. A single witness, Officer Dejuante Forman, was called by the State at the hearing.

---

[4]The State filed identical petitions for adjudication of neglect in matter 23-JA-17, regarding H.C., and in matter 23-JA-18, regarding F.F. In this decision, we will refer to the filings on behalf of the minor children collectively, without separately indicating to which minor child the filing applied, unless the filings differ, or such clarification is needed for our analysis.

¶ 10    Officer Forman testified that he was a police officer employed by the Monticello Police Department. On August 16, 2023, Officer Forman stated that he had responded to a domestic incident call at the respondent's residence. Officer Forman testified that when he arrived at the residence, Matthew came outside and stated that he had gotten into a verbal argument with the respondent, but that he had not hit or struck the respondent. Officer Forman stated that another officer stayed with Matthew while he and another officer attempted to locate the respondent at her mother's home. Officer Forman stated that they had also attempted to locate the respondent at Matthew's parents' home but could not locate her. The officers returned to the respondent's residence and Officer Forman stated that approximately 10 minutes later, the respondent arrived with a friend.

¶ 11    Upon the arrival of the respondent, Officer Forman testified that he observed the respondent crying, and that she had blood running from her nose. Officer Forman stated that he could see that the respondent's lip was bruised and that there was blood running down her face. Officer Forman testified that he spoke with the respondent who stated that Matthew had hit her, that it was not the first time, and that Matthew was "trying to take the baby." Officer Forman stated that Matthew was arrested but was allowed to hold and kiss his young son before being taken to the jail. Officer Forman testified that he did not observe any other children at the residence, and that it did not appear that the respondent was under the influence of any drugs or alcohol.

¶ 12    The State then offered, and the circuit court admitted into evidence without objection, the order of protection obtained by the respondent on August 16, 2023. No other evidence was presented at the hearing by any of the parties. After hearing arguments, the circuit court noted that the respondent's statements in her petition for the order of protection were consistent with her statements to Officer Forman regarding the incident of domestic violence. As such, the circuit court found that the State had met its burden of proof, by a preponderance of the evidence, that the

incident occurred based on the respondent's statements. The circuit court further found that the minor children were neglected as defined by section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)), due to being in an environment that was injurious to their welfare because that environment exposed them to domestic violence. The circuit court directed an investigation to be made, and a report prepared, by Lutheran Child and Family Services (LCFS) on behalf of DCFS and directed that the temporary guardianship and custody of the minor children remain with DCFS. The circuit court entered a written order the same day and set the matter for a dispositional hearing.

¶ 13 On December 12, 2023, the respondent filed a notice of appeal[5] concerning the circuit court's November 20, 2023, adjudication order. On December 22, 2023, the respondent filed a motion in this court to hold the appeal in abeyance acknowledging that the respondent's appeal was premature since a dispositional order had not yet been entered by the circuit court.[6] This court granted the respondent's motion on December 28, 2023, and ordered the appeal held in abeyance pending the entry of a dispositional order by the circuit court.

¶ 14 A dispositional report, prepared by LCFS, was filed for the circuit court's consideration on December 13, 2023. The report indicated that the respondent had six prior indicated investigations with DCFS, including a prior incident of domestic violence between the respondent and H.C.'s father. The report also indicated that in 2019, DCFS had concerns that the respondent would "use other people's clean urine so that results of her urine show as clean." In 2020, it was reported that the respondent had requested H.C.'s babysitter to collect H.C.'s urine so that a friend of the

---

[5]The respondent filed a notice of appeal in matter 23-JA-17, regarding H.C. (appeal No. 5-23-1298), and in matter 23-JA-18, regarding F.F. (appeal No. 5-23-1299). Again, we will refer to the notices of appeal collectively, without separately indicating to which case the filing applied, unless the filings differ, or such clarification is needed for our analysis.

[6]In juvenile cases, an adjudicatory order is not a final and appealable order, but rather, the dispositional order is the final order from which an appeal properly lies. See *In re M.J.*, 314 Ill. App. 3d 649,655 (2000); *In re Smith*, 80 Ill. App. 3d 380, 381 (1980).

respondent could pass a drug screening. Also in 2020, the report stated that the respondent and Matthew "continue using abusing drugs while caring for [the respondent's] children" and that the respondent's children had just recently been returned to the respondent's care after having been removed due to the respondent's drug use. It further stated that Matthew and the respondent were arrested for the manufacturing and delivery of methamphetamine. The report noted that H.C. was in the home during the first of four controlled purchases of methamphetamine by law enforcement. In 2021, the dispositional report stated that the respondent was arrested for theft and was on an unknown drug.

¶ 15    As a result of the current incident, the dispositional report stated that the respondent was recommended to complete mental health and substance abuse assessments, a parenting course, a domestic violence course, and a healthy relationship course. At the time of the report, the respondent was engaged in the classes and had self-reported the completion of the assessments. The agency's evaluation, however, stated that the prognosis for the respondent to regain custody of the minor children was guarded due to a pattern of unsafe parenting. As such, the agency recommended a permanency goal of returning home within 12 months, and that custody and guardianship of the minor children be placed with DCFS.

¶ 16    A supplemental dispositional report was filed on December 18, 2023, by a family advocate from Karma Phoenix Rising Family Advocacy, an agency not affiliated with or contracted by DCFS or LCFS. The matter was scheduled and called for a dispositional hearing the same day. At the beginning of the hearing, the family advocate informed the circuit court that he had been providing family advocacy services to the respondent. The minor children's guardian *ad litem* objected to the family advocate remaining in the proceedings arguing that the family advocate was not associated with DCFS in any manner, nor was he a party to the case. The minor children's guardian *ad litem* further argued that the supplemental report should be stricken and not considered

7

by the circuit court. The State's position with regard to the family advocate was that he was not a service provider, but that the circuit court could treat him as a lay person allowing him to testify, if called by the respondent, to his personal knowledge regarding the matter.

¶ 17 Counsel for DCFS made an oral motion for a continuance in order to have sufficient time to file a written objection to the supplemental dispositional report since the supplemental dispositional report had been filed that day. The circuit court granted a continuance to allow the parties, if they so desired, to conduct additional research and file responses to the supplemental dispositional report. DCFS filed a written motion to strike the supplemental dispositional report on January 2, 2024.

¶ 18 The circuit court resumed the dispositional hearing on January 5, 2024, and the supplemental dispositional report was again addressed at the beginning of the hearing. The State orally joined DCFS's motion to strike, and the minor children's guardian *ad litem* once again argued that the family advocate was not a party to the case, was not a service provider, and that the supplemental dispositional report should not be considered by the circuit court. Counsel for DCFS made the same argument and also argued that the family advocate should not be permitted to be present in the hearing other than, if the respondent so requested, to testify as a lay person.

¶ 19 Respondent's counsel, however, argued that section 2-22(1) of the Act (705 ILCS 405/2-22(1) (West 2022)) permits the circuit court to consider "[a]ll evidence helpful in determining these [dispositional] questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value ***." As such, respondent's counsel argued that the statute does not specifically state who has the authority to file reports, and that the circuit court may consider the supplemental dispositional report. Respondent's counsel further informed the circuit court that counsel was adopting the supplemental dispositional report on behalf of the respondent.

¶ 20    After hearing from all parties, the circuit court noted that the respondent had adopted the supplemental dispositional report and that parents have the right to present any and all evidence that is relevant. As such, the circuit court denied the motion to strike, but stated that it would give the supplemental dispositional report the appropriate weight in terms of what information it offers or does not offer. The circuit court further noted that the family advocate was not a party to the case, nor was he a practicing attorney representing any of the parties to the case. The circuit court further stated that parents have a right to consult with any professional that they wish and also have the right to call them as a witness, but that the family advocate would not be permitted to be present during any hearings.

¶ 21    The State then called Abby Elzy to testify. Elzy stated that she was a caseworker employed by LCFS and that she had prepared the dispositional report filed on December 13, 2023. Since filing the report, Elzy testified that the respondent had completed her mental health and substance abuse assessments, and that the assessments made no recommendations regarding services. To date, Elzy stated that the respondent had completed mental health and substance abuse assessments, and her domestic violence services.

¶ 22    Elzy stated that the respondent was also appearing for her drug screenings, however, three of the four drug screenings results indicated that the submissions had been adulterated, while one submission tested negative. As such, Elzy testified that "although the professional did not recommend any substance abuse treatment," the agency was going to require substance abuse treatment since the assessment was completed prior to the adulterated submissions and was based on the respondent's self-reporting. According to Elzy's testimony, the assessment agency had requested background information regarding the respondent, but when Elzy was able to "reach back out to them they said they completed the assessment and didn't want any more, anything further." Elzy was not aware of how the drug test submissions had been adulterated. Elzy testified

that she had spoken with the respondent regarding the adulterated tests but had not yet provided the respondent with a referral to a specific substance abuse treatment provider.

¶ 23    Elzy stated that the respondent was receiving four hours of supervised visitation a week with the minor children, that the respondent was attending the visits, and that there had been no issues with visitation. Elzy testified that the only service requirements left for the respondent to complete were the successful completion of a substance abuse treatment and to produce unadulterated negative drug screenings for six months. Elzy stated that the respondent would not be permitted additional supervised visitation until completion of the foregoing. Finally, Elzy stated that the respondent was making efforts, progress, and complying with services, but given that the respondent had a long history of substance abuse and a long history with DCFS, it would be in the minor children's best interest to wait the six months and "make sure everything's going well." No further evidence was presented by the State.

¶ 24    Next, respondent's counsel called the respondent to testify on her own behalf. The respondent stated that, in this matter, she had completed parenting classes, a relationship course, a domestic violence course, an anger management course, and attended all visitations with the minor children. The respondent further stated that she had begun some of these courses prior to receiving a service plan in order "to get a jump start" on services. As such, the respondent testified that she was able to provide a safe home for the minor children. No further evidence was presented by the respondent.

¶ 25    The circuit court then heard arguments by the parties and stated as follows:

    "Based upon the information contained, I am going to find that at this time it is in the best interest of the minor children that they be adjudicated as wards of the Court, that right now Matthew and [the respondent] are not able to exercise custody and guardianship

because there are still some finalizing with regard to substance abuse treatment that the Department has outlined in the testimony and arguments."

¶ 26    The circuit court found that the removal of the minor children from the home was necessary for the health, safety, and welfare of the minor children, but recommended that the respondent receive more visitation time. The circuit court set a permanency goal of returning home within 12 months, and placed custody and guardianship of the minor children with DCFS. The circuit court noted the respondent's prior premature filing of a notice of appeal and directed the circuit clerk to file a notice of appeal since the dispositional determination had been entered.

¶ 27    On January 8, 2024, the respondent filed a status report with this court indicating that the dispositional order had been entered by the circuit court on January 5, 2024. As such, this court removed the appeals from abeyance and, *sua sponte*, consolidated the appeals for all purposes, including briefing and the decision herein.

¶ 28                                   II. ANALYSIS

¶ 29    The Act (705 ILCS 405/1-1 *et seq.* (West 2022)) provides a two-step process for an adjudication of wardship. *In re A.P.*, 2012 IL 113875, ¶ 18. The first step is the adjudicatory hearing at which the circuit court considers only whether the minor is abused, neglected, or dependent. 705 ILCS 405/2-18(1) (West 2022); *In re A.P.*, 2012 IL 113875, ¶ 19. If the circuit court determines that the minor is abused, neglected, or dependent, then the matter proceeds to a dispositional hearing at which the circuit court determines whether it is consistent with the health, safety, and best interests of the minor and the public that the minor child be made a ward of the court. 705 ILCS 405/2-22(1) (West 2022); *In re A.P.*, 2012 IL 113875, ¶ 21.

¶ 30    The respondent first argues that the circuit court's finding that the minor children were neglected was against the manifest weight of the evidence. The respondent argues that the State presented no evidence that H.C. was present during any incident of domestic violence between the

11

respondent and Matthew. The respondent notes that Officer Forman did not mention H.C. in his testimony and that the order of protection, although H.C. was a protected person, did not mention H.C. being present during the incident. The respondent also argues that the evidence presented by the State demonstrated that F.F. slept through the incident and there was no evidence that F.F. was present at any other instance of domestic violence between the respondent and Matthew. As such, the respondent argues that there was no evidence of any instances of discord that posed harm to either of the minor children.

¶ 31    The respondent further states that she had immediately obtained the order of protection, never took any steps to have the order of protection modified or dismissed, and that neither party had violated the terms of the order of protection during the months it had been in effect. The respondent argues that the immediate obtainment of the order of protection demonstrated that the respondent had addressed the well-being of the minor children. Therefore, the respondent argues that the circuit court's finding that the minor children were neglected was against the manifest weight of the evidence.

¶ 32    Section 2-3(1)(b) of the Act defines a "neglected minor" to include any minor under the age of 18 years old whose environment is injurious to his or her welfare. 705 ILCS 405/2-3(1)(b) (West 2022). "Neglect" is not defined within the Act but, generally, "is the failure to exercise the care that circumstances justly demand and encompasses both wilful and unintentional disregard of parental duty." *In re M.K.*, 271 Ill. App. 3d 820, 826 (1995). "Injurious environment" also cannot be defined with particularity, but generally includes "the breach of a parent's duty to ensure a 'safe and nurturing shelter' for his or her children." *In re A.P.*, 2012 IL 113875, ¶ 22 (quoting *In re N.B.*, 191 Ill. 2d 338, 346 (2000)). "Neglect" and "injurious environment" are fact-driven in nature and, as such, this court will not reverse a circuit court's finding of neglect unless it is against the manifest weight of the evidence. *In re A.L.*, 2012 IL App (2d) 110992, ¶ 13. A finding is against

12

the manifest weight of the evidence only if the opposite conclusion is clearly evident or the finding itself is unreasonable, arbitrary, or not based on the evidence presented. *In re Arthur H.*, 212 Ill. 2d 441, 464 (2004). Further, in matters of child custody, the circuit court's discretion is even greater than in an ordinary appeal applying the manifest weight of the evidence standard. *In re A.L.*, 2012 IL App (2d) 110992, ¶ 13.

¶ 33    The State has the burden of proving allegations of neglect by a preponderance of the evidence. *In re Arthur H.*, 212 Ill. 2d at 463-64. A preponderance of the evidence means that the State must show that the allegations are more probably true than not. *Id.* at 464. In this matter, the State presented the testimony of Officer Forman and entered the order of protection obtained by the respondent into evidence. The order of protection detailed the incident that occurred on August 16, 2023, which was supported by Officer Forman's testimony, along with a history of verbal and physical abuse that began shortly after the respondent became pregnant with F.F. The physical domestic abuse the respondent described in her petition for an order of protection included "hitting me[,] head butting me, and choking me out." The verbal abuse included Matthew calling the respondent "fat and lazy among many other names."

¶ 34    As such, the circuit court had evidence, by the respondent's own admission, that there was ongoing verbal and physical domestic abuse that had been occurring since the respondent's pregnancy with F.F. Even if the minor children were not present or harmed during the incident on August 16, 2023, proof of actual harm is not required to sustain a finding of neglect. *In re K.F.*, 2023 IL App (1st) 220816, ¶ 46. "Evidence that a parent exposed a child to a risk of danger is sufficient, even if the child has not yet been harmed by the danger." *Id.* ¶ 50.

¶ 35    The respondent also argues on appeal that the order of protection was immediately obtained, and had not been modified or violated, which demonstrated that the minor children were not neglected as the respondent had taken action to ensure the well-being of the minor children.

13

The respondent, however, made no such argument at the hearing and has forfeited this argument on appeal. See *In re M.W.*, 232 Ill. 2d 408, 430 (2009) ("forfeiture principle applies in proceedings under the Juvenile Court Act [citation], although no postadjudication motion is required in such cases [citations]").

¶ 36    The circuit court considered the testimony of Officer Forman, the order of protection, and the arguments of the parties. The circuit court noted that Officer Forman's testimony was consistent with the respondent's statement in the order of protection and demonstrated that an incident of domestic abuse had more probably than not occurred on August 16, 2023, while at least one of the minor children were present. The circuit court also noted the respondent's own "reported history of domestic violence" as stated in the order of protection. Based on the foregoing, we find that the circuit court's finding that the minor children were neglected as defined in section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)), due to being in an injurious environment that exposed the minor children to domestic violence, was not against the manifest weight of the evidence.

¶ 37    Next, the respondent argues that the circuit court's dispositional finding of unable to parent the minor children was against the manifest weight of the evidence, and that the circuit court abused its discretion in its selection of the dispositional order. Specifically, the respondent argues that the circuit court's finding that she was unable to parent the minor children because she needed "to complete substance abuse treatment" was against the manifest weight of the evidence because "the evidence of such a need was thin." The respondent notes that the dispositional report did not provide any social history for the respondent and that the prior DCFS investigations involving drugs occurred in or before 2021.

¶ 38    The respondent states that, although three of four drug screens were adulterated, there was no evidence regarding how the screens had been adulterated. The respondent argues that her

14

substance abuse assessment concluded that additional substance treatment was unnecessary, but that LCFS disregarded that conclusion and, instead, made the determination that additional treatment was needed based solely on the respondent's past drug usage.

¶ 39 The respondent also argues that, because of the order of protection, DCFS had initially deemed the minor children safe and had not implemented a safety plan. The respondent argues that the only change between the incident and DCFS taking protective custody of the minor children was the respondent's text message, which the respondent had argued had been misunderstood. According to the respondent, she did not want to risk violating the order of protection so she sought the advice of DCFS on whether Matthew could assist with yard work and attend marriage counseling in an attempt to save their marriage. The respondent notes that the actual text message was never introduced into evidence, and that there was never an attempt to modify or dismiss the order of protection by the respondent.

¶ 40 The respondent also argues that, at the time of the dispositional hearing, the respondent had completed a relationship course, a domestic violence course, an anger management course, a parenting course, and that she consistently attended visitation with the minor children. The respondent argues that the State presented no evidence to suggest that, at any time, the minor children were without proper care, clothing, or medical attention, or that the respondent had become unwilling to engage in services or abide by the order of protection.

¶ 41 As such, the respondent argues that she had completed everything LCFS had required of her and that she was able to provide a safe home for the minor children at the time of the dispositional hearing. Therefore, the respondent argues that circuit court's finding that she was unable to parent the minor children was against the manifest weight of the evidence.

¶ 42 At a dispositional hearing, the circuit court may commit a minor child to wardship if the circuit court determines that the minor's parents are (1) "unfit or are unable, for some reason other

than financial circumstances alone, to care for, protect, train or discipline the minor or are unwilling to do so" and (2) "that the health, safety, and best interest of the minor will be jeopardized if the minor remains in the custody of the minor's parents." 705 ILCS 405/2-27(1) (West 2022). The paramount consideration in any proceeding initiated pursuant to the Act is the best interest of the minor. *In re A.P.*, 2012 IL 113875, ¶ 18. The States bears the burden of proving a parent's inability by a preponderance of the evidence at the dispositional phase. *In re Kelvion V.*, 2014 IL App (1st) 140965, ¶ 23.

¶ 43    This court will defer to the circuit court's findings of fact because it is in the best position to observe the testimony of the witnesses, assess their credibility, and weigh the relative evidence. *In re Sharena H.*, 366 Ill. App. 3d 405, 415 (2006). The circuit court's determination will only be reversed if its factual findings are against the manifest weight of the evidence or if the circuit court abused its discretion by selecting an inappropriate dispositional order. *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006). As stated above, a factual finding is against the manifest weight of the evidence where the opposite conclusion is clearly evident or where its finding is unreasonable, arbitrary, or not based on the evidence presented. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 41. An abuse of discretion will only be found if the circuit court acted arbitrarily, without employing conscientious judgment, or whether, considering all the circumstances, the circuit court acted unreasonably and ignored recognized principles of law, which resulted in substantial prejudice. *In re D.M.*, 336 Ill. App. 3d 766, 772 (2002).

¶ 44    The respondent argues that the circuit court had insufficient evidence to support its finding that the respondent was unable to parent the minor children; however, the circuit court heard the testimony of Elzy regarding the adulterated drug screens along with the respondent's long history of substance abuse that was set forth in the dispositional report. Elzy testified that the respondent's substance abuse assessment was completed based on the respondent's self-reporting and had

occurred prior to the adulterated drug screens. As such, Elzy testified that it was in the minor children's best interests to wait and allow the respondent to successfully complete a substance abuse treatment program and to produce unadulterated negative drug submissions for six months. The circuit court also had the dispositional report which stated an incident in which the respondent had been reported to use other people's clean urine in order to pass her mandatory drug screenings and another incident where the respondent had asked H.C.'s babysitter to collect H.C.'s urine so that a friend could pass a drug test. As such, the circuit court found that the State had proven, by a preponderance of the evidence, that the respondent was unable to parent the minor children at that time due to the respondent's need to complete substance abuse treatment and submit six months of unadulterated drug screenings.

¶ 45    While we commend the respondent on her willingness to cooperate and diligence in completing her services, we do not find that the opposite conclusion is clearly evident or that the circuit court's finding was unreasonable, arbitrary, or not based on the evidence presented. Therefore, we find that the circuit court's finding that the respondent was unable was not contrary to the manifest weight of the evidence.

¶ 46    Finally, the respondent states that the circuit court abused its discretion in removing custody of the minor children from the respondent. It is simply a statement with no argument. As such, the respondent has forfeited review of whether the circuit court abused its discretion in its selection of the dispositional order as she failed to make an argument on this claim in her brief. "Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). " 'An issue that is merely listed or included in a vague allegation of error is not "argued" and will not satisfy the requirements of the rule.' " *People v. Nere*, 2018 IL 122566, ¶ 25 (quoting *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010)).

17

¶ 47                              III. CONCLUSION

¶ 48     Based on the foregoing, we find that the circuit court's finding that the minor children were neglected as defined in section 2-3(1)(b) of the Act (705 ILCS 405/2-3(1)(b) (West 2022)), due to being in an injurious environment that exposed the minor children to domestic violence, was not against the manifest weight of the evidence. We further find that the circuit court's finding that the respondent was unable was not contrary to the manifest weight of the evidence, and that the respondent has forfeited review of whether the circuit court abused its discretion in its selection of the dispositional order. Therefore, we affirm the January 5, 2024, dispositional order of the circuit court of Piatt County.

¶ 49     Affirmed.